UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HUNTER KEITH KOEHLER,

    Plaintiff,

v.                                Case No.:  2:22-cv-210-JES-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT & RECOMMENDATION

    Plaintiff Hunter Koehler sues under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner of Social Security's decision denying his application for disability insurance benefits and supplemental security income. (Doc. 1.)[1] For the reasons below, the Commissioner's decision should be affirmed.

### I. Background

    The procedural history, administrative record, and law are summarized in the parties' briefs (Doc. 17, Doc. 19) and are not fully repeated here. In short, Koehler filed for disability benefits in 2020. His application was denied initially

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

and again upon reconsideration. He then requested further review before an administrative law judge. (Doc. 17 at 2.)

Following a hearing, the ALJ concluded that Koehler suffered from the following severe impairments: "learning disability, attention deficit hyperactivity disorder, dyslexia, borderline intellectual functioning (BIF), scoliosis, and abdominal trauma." (Tr. 15.)Still, the ALJ found Koehler had the residual functional capacity ("RFC") to perform light work with these clarifications:

> the individual is able to understand, remember, and carry out simple, but limited to one to two step instructions or tasks; the individual is able to make judgments on work-related decisions with simple, but limited to one to two step instructions or tasks in such work environment; the individual is able to respond and adapt to routine work situations and to occasional changes in a work setting without special supervision with simple, but limited to one to two step instructions or tasks; can interact appropriately with others in a work environment throughout a standard workday without distracting them or exhibiting behavioral extremes so long as there is no more than brief and superficial interaction with the public; no more than occasional interaction with supervisors and coworkers, but can interact sufficiently to receive daily task assignments and respond to brief status updates; is limited to jobs with a general educational development (GED) reasoning level not exceeding 1, a language level not exceeding 1, and math level not exceeding 1.

(Tr. 18.) After considering the RFC and other evidence, including the testimony of a vocational expert, the ALJ ultimately concluded that Koehler can perform

three unskilled jobs that exist in significant numbers in the national economy. (Tr. 26.)

The ALJ issued an unfavorable decision finding Koehler not disabled at any time from the alleged onset date. The Appeals Council denied further review, and this lawsuit timely followed. (Doc. 1.)

## II. Standard of Review

Review of the Commissioner's decision denying disability benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

When determining whether the Commissioners' decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or

3

substitute its judgment for that of the ALJ. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## III. Discussion

Koehler makes three arguments on appeal. First, he claims substantial evidence does not support the ALJ's treatment of two medical opinions. (Doc. 17 at 1.) Next, he says the ALJ erred by finding jobs available outside the RFC. (*Id.*) And last, he alleges the ALJ erred by finding jobs available which require greater specific vocational preparation than recommended by the Social Security Administration. (*Id.*) These issues are addressed in turn.

### A. Contested Medical Opinions

A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). When dealing with a medical opinion, the ALJ must consider its persuasiveness using several factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." 20 C.F.R.

§§ 404.1520c(a), 416.920c(a).[2] Supportability and consistency "are the most important factors" in determining persuasiveness. *Id.* § 404.1520c(b)(2). And because of their importance, the ALJ must explain "how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* Put simply, the ALJ is required to consider the factors of supportability and consistency for each medical opinion.

Koehler argues the ALJ failed to follow this framework in reviewing the opinions of two psychologists—Barbara Drill and Christine Needham. (Doc. 17 at 21.) Drill and Needham seemingly conducted a joint psychological evaluation, and Drill gave a separate mental RFC assessment. (Tr. 1244-79.) Their reports are essentially identical, so the ALJ addressed them together (Tr. 24-25) as did the parties (Doc. 17 at 21-27, Doc. 19 at 6-13.) The Court sees no reason to depart from this joint approach, so it does the same.

Despite Koehler's objection, the ALJ properly considered the supportability of the psychologists' opinions. He explained that Koehler's activities of daily living and lack of treatment history do not support the "extreme limitations" assigned by the psychologists. (Tr. 24-25.) For example, Koehler "reported driving daily, spending 60-90 minutes daily on the internet,

---

[2] The Social Security Administration recently revised the rules it uses to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The final rules became effective in March 2017. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). Because Koehler filed his claims after that date (Tr. 10), the revised regulations apply here.

5

looking for work, preparing simple meals, dressing and bathing without assistance, doing laundry, washing dishes, taking out the trash, and spending eight hours weekly working on four wheelers, car engines, or his grandparents' boat." (Tr. 25.) An ALJ may rely on a claimant's daily activities and treatment history when evaluating the supportability of proffered medical opinions. *See, e.g., Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1306-07 (11th Cir. 2018).

The ALJ also explained that the psychologists' opinions depended too much on subjective factors, which undercut their supportability. (Tr. 25.) For example, he noted that they relied on Koehler's "own preferences" for work in coming to their conclusions. (Tr. 25.) An ALJ may rely on this type of evidence as well. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

The ALJ addressed consistency too, finding the psychologists' opinions conflict with Koehler's significant work history and successful high school graduation. (Tr. 24.) He then noted the opinions depart from the treatment of two other physicians, Dr. Kasprzak and Dr. Morris. (Tr. 24.) Thus, the ALJ addressed the required factors and properly used his discretion to evaluate conflicting evidence. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) ("It is solely the province of the [Commissioner] to resolve conflicts in the evidence and assess the credibility of witnesses.").

6

Pivoting slightly, Koehler argues the ALJ erred by substituting his own opinion for that of the psychologists. (Doc. 17 at 25.) Perhaps that would be case if the ALJ "relied on the appearance of the claimant at the time of the hearing," *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982), or "arbitrarily substitute[d] his own hunch or intuition," *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992), or made findings entirely unsupported by the record, *Smith v. Astrue*, 641 F. Supp. 2d 1229, 1231-34 (N.D. Ala. 2009), or changed the definition of terms in his hypothetical to the vocational expert, *Stevenson v. Apfel*, 103 F. Supp. 2d 1315, 1321 (N.D. Ga. 1999). Those are the cases Koehler cites supporting his claim, yet he fails to show how the ALJ's treatment is remotely similar. Instead, what we have here is merely conflicting evidence in the record that the ALJ was required to resolve.

Koehler seems to suggest the ALJ must have substituted his own opinion for the psychologists' because theirs were consistent with another medical professional, Dr. Capozzoli. (Doc. 17 at 25.) There are several problems with this argument. For starters, it essentially asks the Court to reweigh the evidence, which is something it cannot do. Resolving conflicting medical opinions is for the ALJ. *Lacina*, 606 F. App'x at 525. And "when there is credible evidence on both sides of an issue," as here, "it is the . . . the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th

7

Cir. 1984). As stated above, the ALJ found Drill's and Needham's conclusions unpersuasive because they strayed from other evidence in the record. The fact that Dr. Capozzoli had a similar opinion does not compel a contrary conclusion. (Tr. 24.)

If Koehler is not asking for the evidence to be re-weighed, the Court fears he would have it interpret any rejection of a medical opinion as an automatic and impermissible "substitution" of judgment. But that approach conflicts with the ALJ's duty. *See* 20 C.F.R. § 404.1520c(a) ("[The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."). When weighing the evidence, the ALJ may discredit a medical opinion without substituting his judgment. In fact, quite ironically, one of the cases Koehler uses to make his argument rejected the same logic advanced here. *Giddens v. Chater*, No. 95-148-1-MAC(CWH), 1996 WL 392143, at *2 (M.D. Ga. Feb. 23, 1996) ("The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician.").

Finally, as stated above, the ALJ relied on Drill's and Needham's opinions to reject the state agency psychiatric consultant and build the RFC. (Tr. 23, 25.) Thus, he could not have substituted his own opinion for theirs.

8

Although not identified in the issue statement or argument heading, Koehler also attacks the sufficiency of the evidence the ALJ used to discredit Drill and Needham. (Doc. 17 at 27 ("[T]he ALJ issued a decision unsupported by substantial evidence.").) "Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). Koehler has not done that here. Instead, his brief recites facts he perceives as favorable and asks the Court to come out the other way. (Doc. 17 at 22-23.)

First, Koehler proffers that he was only successful in past work because his grandfather was his supervisor and, once his grandfather left, he could not perform the work anymore. (Doc. 17 at 22.) But Koehler fails to explain why that work history undermines the ALJ's conclusions. The Court should not invent an argument for him. *See Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1149 (11th Cir. 2017) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties."); *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him.").

9

Next, Koehler says the ALJ failed to mention Dr. Kasprzak's findings of borderline intellectual ability and sub-normal attention and concentration. (Doc. 17 at 23.) That is just inaccurate. The ALJ specifically mentioned those findings (Tr. 21), used them to discredit the state agency psychiatric consultants (Tr. 23), and ultimately found Dr. Kasprzak to be persuasive (Tr. 24.) Once again, the Court fails to see how this shows a lack of substantial evidence.

Continuing, Koehler states the ALJ could not use a physical examiner's opinion (Dr. Morris) to reject a "well-supported psychological examination." (Doc. 17 at 23.) For this point he quotes *Mulholland v. Astrue*, which held: "[P]hysical examinations in which the doctors would not necessarily seek to make a mental health diagnosis . . . is of limited value in contradicting [a mental health specialist's] opinion." No. CIVA 1:06-CV-2913AJB, 2008 WL 687326, at *12 (N.D. Ga. Mar. 11, 2008). But in *Mulholland* the only other opinion evidence supported the psychological expert and not the medical doctor. *Mulholland*, 2008 WL 687326, at *12. Here, however, the record supports Dr. Morris's opinion. (Tr. 24.) And there is evidence that contradicts the mental health specialist's opinions. (Tr. 24-25.) Thus, *Mulholland* does not fit.

Finally, Koehler says his activities of daily living cannot discredit a psychological expert's opinion based on objective testing. (Doc. 17 at 23.) He

10

fails to support this claim with any case law or further explanation. Thus, it seems he is asking the Court to reweigh the evidence as it relates to the activities of daily living. Again, it will not. The code states the ALJ is to consider activities of daily living. 20 C.F.R. § 404.1529 ("[The ALJ] will consider . . . any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [his] activities of daily living and [his] ability to work."); *see also* 20 C.F.R. § 416.929 (same). And the Eleventh Circuit has commented the ALJ *must* consider them. *Sims*, 706 F. App'x at 604. Nothing indicates the ALJ relied solely on Koehler's activities of daily living. (Tr. 18.) Thus, there was no error.

For all these reasons, the ALJ's evaluation of Drill and Needham should be upheld.

### B. Available Work Findings

Koehler's final two arguments are grouped together because they concern the last step in the ALJ's analysis. Koehler claims the ALJ erred in finding he could perform other work in the national economy because the jobs cited (1) do not comply with the RFC, and (2) require a specific vocational preparation ("SVP") greater than the Social Security Administration recommends. These arguments are unavailing.

*1. Whether the ALJ erred by citing jobs that do not comply with the RFC*

11

The RFC limited Koehler to "light work" (Tr. 18), which means "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b) (same). It also said his interactions with the public should be "no more than brief and superficial." (Tr. 18.) The ALJ then asked a vocational expert to testify on whether there are jobs available in the significant numbers in the national economy that would account for these limitations. (Tr. 26.) Using data from the Dictionary of Occupational Titles ("DOT"), the vocational expert reported there are at least three such jobs: a housekeeper, a garment folder, and a basket filler. (Tr. 26.)

Koehler claims all three jobs require more than light exertion. And the housekeeper job requires more than incidental interaction with the public. (Doc. 17 at 27.) His only support for these conclusions is data from the Occupational Requirements Survey ("ORS"), which is prepared by the U.S. Bureau of Labor Statistics. (*Id.*)

To deny disability benefits, the Commissioner must "show that there is other work available in significant numbers in the national economy that the claimant [can] perform" despite his impairments. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017). To carry this burden, the Commissioner may "take administrative notice of reliable job information available from various governmental and other publications," including the

12

DOT, the County Business Patterns, Census Reports, Occupational Analyses, and the Occupational Outlook Handbook. 20 C.F.R. § 404.1566(d). The regulations also permit the Commissioner to base his decision on information supplied by a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

Although not entirely clear, Koehler seems to suggest that remand is required for the ALJ to address the ORS data regarding exertions levels. The Court disagrees.

In *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553 (11th Cir. 2019) the Eleventh Circuit faced a similar argument: an ALJ allegedly erred by failing to investigate a conflict between the vocational expert's testimony and a job availability publication of the Bureau of Labor Statistics, the Occupational Employment Statistics ("OES"). It held that an ALJ must only independently verify a vocational expert's testimony when it conflicts with the DOT. *Webster*, 773 F. App'x at 555-56. And further, the Eleventh Circuit noted "the figures in the OES are not part of the SSA's regulatory scheme." *Id.* (citing 20 C.F.R. § 404.1566(d)(1), (5)). The same reasoning applies here. The ALJ was not required to resolve conflicts between the vocational expert's testimony and the ORS. And, like the OES, the ORS is not "part of the SSA's regulatory scheme." Thus, ALJ did not err by failing to consider the ORS data or coming to a

13

contrary conclusion. *See Mesa v. Kijakazi*, No. 21-20424-CIV, 2022 WL 4369733, at *14 (S.D. Fla. May 11, 2022).

Koehler's argument fails for another reason—the ORS data is not part of the administrative record before the Court. Generally, "under the substantial-evidence standard, a court looks to an existing administrative record." *Biestek*, 139 S. Ct. at 1154. Koehler did not use the ORS data to rebut the vocational expert's testimony at the hearing or provide it to the ALJ. The ORS was first raised to the Appeals Council. On this point, the Eleventh Circuit has held "that when a claimant challenges the administrative law judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence submitted to the Appeals Council." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1266 (11th Cir. 2007). That is precisely the case here. Koehler made his ORS arguments to the Appeals Council, which accepted and considered the new evidence but ultimately denied his appeal. (Tr. 1-6, 404-28.) His complaint challenges the ALJ's decision to deny benefits and not the Council's decision to deny review. (Doc. 17 at 1.) Thus, this Court need not consider the ORS data in the first place. *See, e.g., Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 832 (11th Cir. 2011).

In any event, substantial evidence supports the ALJ's reliance on the vocational expert's testimony. As explained, a vocational expert may rely on DOT data. In fact, an ALJ may credit on a vocational expert's opinion even without statistical support. *Biestek*, 139 S. Ct. at 1156-57. Koehler alleges no tension between the DOT data and the vocational expert's testimony, much less a "reasonably ascertainable or evident" conflict. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021). Thus, substantial evidence supports the ALJ's ultimate conclusion.

   2. *Whether the ALJ erred by citing jobs that require more SVP than recommended*

This final issue involves the Specific Vocational Preparation—*i.e.*, the time to learn how to complete a task—for the jobs the ALJ found Koehler could perform. The heading for Koehler's argument summarizes his position:

> The ALJ erred in finding plaintiff could perform work with an SVP of 2, given that the Social Security Administration repeatedly advised him he could perform work requiring only a very short on-the-job training period equating to SVP 1, the ALJ did not indicate he rejected this finding, and he gave no reason for rejecting the finding.

(Doc. 17 at 30.) Koehler essentially claims the ALJ should have rejected the vocational expert's testimony about his ability to perform the housekeeper and garment folder jobs.[3] These jobs have an SVP of 2, which Koehler says makes

---

[3] Of the three jobs found to be available, only these two required an SVP greater than 1. (Tr. 26.)

15

them inconsistent with the Social Security Administration's statements that he "could [only] perform work equivalent to SVP 1." (*Id.* at 32.)

Two problems. First, the Social Security Administration never limited Koehler to SVP 1 work. The Social Security Administration said he is "capable of performing work that requires less physical effort, and only a very short, on-the-job training period." (Tr. 196, 196, 225, 227.) This statement does not have an SVP component, and Koehler fails to explain how these limitations translate to only SVP 1 work. Second, and equally preclusive, the statement above was made by the Social Security Administration's disability examiner, first at initial consideration and then at reconsideration. Thus, the ALJ had a good reason for ignoring it: "Findings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled" are "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). As a result, the ALJ "will not provide any analysis about how [he] considered such evidence in [his] determination or decision." *Id.* Under this framework, the ALJ was not required to incorporate the disability examiner's findings even if they somehow limited Koehler to SVP 1 work.

That still leaves the question of whether the vocational expert's testimony that Koehler could perform jobs with an SVP of 2 conflicts with the

16

RFC. Even read this broadly, Koehler's argument still fails. The RFC restricted him "to one to two step instructions or tasks." (Tr. 18.) Koehler has not shown that this limitation categorically conflicts with an SVP 2 designation.

## IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings. Accordingly, it is **RECOMMENDED** that the Commissioner be **AFFIRMED** and judgment be entered against Koehler.

**ENTERED** in Fort Myers, Florida this November 10, 2022.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.